Commonwealth *v.* McCloud, Appellant.

Argued May 2, 1974. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*Nolan N. Atkinson, Jr.,* with him *Zack, Myers and Atkinson,* for appellant.

*Albert L. Becker,* Assistant District Attorney, with him *David Richman,* Assistant District Attorney, *Abraham J. Gafni,* Deputy District Attorney, *Richard A.*

*Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, July 29, 1974:

Appellant, Artie McCloud, was charged with the murder of one Louella Pester. At McCloud's jury trial, the Commonwealth endeavored to satisfy its burden of proving legal causation beyond a reasonable doubt by reading into evidence, over repeated objection, substantial portions of the written report of the official, salaried medical examiner who performed an autopsy on the deceased. The medical examiner was not called to testify; at the time of trial he was attending a convention. Recognizing that the report was hearsay evidence, the Commonwealth relied on a claimed statutory exception to the hearsay rule, the Pennsylvania Uniform Business Records as Evidence Act.[1] On this direct appeal[2] from his conviction of murder in the second degree, appellant contends that the Commonwealth's introduction of the report without calling the medical examiner constitutes reversible error. We agree.

The Pennsylvania Constitution guarantees an accused the right to confront and cross-examine witnesses.

---

[1] Act of May 4, 1939, P.L. 42, §§ 1-4, 28 P.S. §§ 91a-d (1958). Section 2 of the Act, modeled on the Uniform Business Records as Evidence Act, provides: "A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." 28 P.S. § 91b (1958). This Act is applicable only to the extent it does not conflict with either the Pennsylvania or United States Constitutions. See 1 Pa. C. S. § 1925 (1973).

[2] See Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp. 1974).

Pa. Const. art. I, § 9. Although a fundamental right, this right of confrontation is not absolute. In certain circumstances, the admission of hearsay evidence does not violate the constitutional guarantee; in others, its introduction is constitutionally repugnant. Compare *Commonwealth v. Ransom,* 446 Pa. 457, 288 A.2d 762 (1972), with *Commonwealth v. Thomas,* 443 Pa. 234, 279 A.2d 20 (1971). See also *California v. Green,* 399 U.S. 149, 155-56, 90 S. Ct. 1930, 1933-34 (1970).[3] But this divergence in our holdings is no more than a recognition of the principle that "there are clearly different kinds of hearsay testimony possessed of varying degrees of prejudice." *Commonwealth v. Thomas,* supra at 239, 279 A.2d at 23. In delineating the line between admissible and inadmissible hearsay in a criminal case, it is therefore necessary to assess the purpose of the proffered evidence and the risks inherent in its admission.

Causation is an element of the crime of murder and must be proved beyond a reasonable doubt by the Commonwealth in every homicide prosecution. *Commonwealth v. Newkirk,* 455 Pa. 559, 317 A.2d 216 (1974). Frequently, the cause of death is seriously in issue and the subject of conflicting opinion by qualified physicians. See, e.g., *Commonwealth v. Hudson,* 455 Pa. 117, 314 A.2d 231 (1974). This is not surprising, because the legal cause of death is at best a conclusion based on interpretation of often conflicting medical opinion. This Court stated in *Paxos v. Jarka Corp.,* 314 Pa. 148, 154, 171 A. 468, 471 (1934) (civil litigation) : "As any

---

[3] For further discussion of this distinction, see, e.g., *Dutton v. Evans,* 400 U.S. 74, 91 S. Ct. 210 (1970) ; *Roberts v. Russell,* 392 U.S. 293, 88 S. Ct. 1921 (1968) (per curiam) ; *Bruton v. United States,* 391 U.S. 123, 88 S. Ct. 1620 (1968) ; *Barber v. Page,* 390 U.S. 719, 88 S. Ct. 1318 (1968) ; *Douglas v. Alabama,* 380 U.S. 415, 85 S. Ct. 1074 (1965) ; *Pointer v. Texas,* 380 U.S. 400, 85 S. Ct. 1065 (1965) ; *Mattox v. United States,* 156 U.S. 237, 15 S. Ct. 337 (1895).

practical experience in trial work reveals, the testimony of a doctor as to the extent of injuries and their effects is primarily opinion evidence at best, and, where the person stating the opinion is present in court, is subjected to the severest of examinations to test its strength." It is precisely because medical evidence is opinion evidence that this Court has held that "causation is an issue of fact for the jury." *Commonwealth v. Carn*, 449 Pa. 228, 230, 296 A.2d 753, 754 (1972).

Had the medical examiner been called to testify, the opinions, conclusions, and interpretation contained in the autopsy report would have been subject to cross-examination. The defense would have been able to submit the reliability of the examiner's opinion to the jury's scrutiny. Any weakness could have been unearthed.[4]

---

[4] A particularly striking example of the vulnerability of medical opinion to cross-examination is reported in Kirwan, Mistakes in Homicide Investigation, 1966 Med. Trial Tech. Q. 49: "The somewhat mysterious death of a notorious person in a tavern aroused a great deal of public interest, especially after the coroner had ruled death from natural causes. Arrangements for an autopsy were made, and two locally prominent hospital pathologists were engaged. Their examination disclosed that death resulted from laceration of the liver and massive hemorrhage. This finding led to the arrest of a suspect who was charged with having killed the man by striking and kicking him in the abdomen. At the trial some time later, the defense attorney, in maintaining his client's innocence, alleged that the deceased had been drunk and quarrelsome at the time of the assault, and that as a consequence of his condition, he had attacked the defendant, striking him on the head and face with his fists. The defense argued further that the deceased had sustained his fatal injury by falling against the sharp corner of a table, rather than by being struck and kicked. If these statements were true, the defendant was innocent. It was expected that the autopsy findings would throw some light on the facts.

"When the pathologists who had performed the autopsy were on the witness stand, the defense attorney brought out that they had not tested the dead man's blood or brain for alcohol, examined his hands for evidence of bruises, or examined his abdominal wall

However, "[a]n opinion expressed in hospital records [were they to be admitted without the presence of the physician] is subject to no such searching inquiry as to accuracy, soundness, and veracity. Hence the danger in admitting them is very great. However admirable, whatever the character and reputation of the institution from which records come, to deny a defendant the opportunity to test the correctness of the diagnosis and ascertain the qualifications of the assertor . . . is to deny [him] a substantial right." *Paxos v. Jarka Corp.,* supra at 154, 171 A. at 471. The "substantial right" here denied was the right to cross-examine; the medical examiner's opinion was thus insulated from effective challenge.

*Commonwealth v. Mobley,* 450 Pa. 431, 301 A.2d 622 (1973), upon which the Commonwealth relies, is not to the contrary. In *Mobley,* we approved the admission of certain hospital records as a business records exception to the hearsay rule. There, however, we specifically limited our holding: "The records were offered not to show medical opinion, but for the legitimate purpose of establishing the fact of hospitalization and the treatment given." Id. at 435, 301 A.2d at 624.

*Mobley* demonstrates the error in the Commonwealth's argument; it illustrates, we have stated, that the purpose of offered evidence can determine its admissibility with respect to the confrontation clause. Here, the record, over objection, was offered to prove an essential element of the crime charged. The Supreme Court of Minnesota perceptively observed: "It appears from the various decisions that the admissibility in evidence of business records depends upon the purpose for which they are offered. If they are offered to prove an

---

for injuries which might indicate the kind of impact which ruptured the viscus. The defendant was acquitted but no one knows whether his story was true or false." Id. 57-58.

essential element of the crime or connect the defendant directly to the commission of the crime, then they must be proved through persons having personal knowledge of the element or connection and such persons must be available for cross-examination. If, instead of producing the person who has personal knowledge, the state relies on documents made by such person or recorded testimony, the defendant has been denied his right to confront the witnesses against him." *State v. Matousek,* 287 Minn. 344, 350, 178 N.W.2d 604, 608 (1970).

Here, for example, it may have been proper under *Mobley* to use the autopsy report to establish the fact of decedent's death, to show that an autopsy had been performed, or to verify the identity of the examiner who performed the autopsy. Cf. *United States v. Burruss,* 418 F.2d 677, 678-79 (4th Cir. 1969); *United States v. Shiver,* 414 F.2d 461, 463 (5th Cir. 1969). However, its use as direct evidence in establishing the *cause* of death (an element of the crime) denied appellant the fundamental constitutional right of confrontation and was error.

We therefore hold that in a homicide prosecution, evidentiary use, as a business records exception to the hearsay rule, of an autopsy report in proving legal causation is impermissible unless the accused is afforded the opportunity to confront and cross-examine the medical examiner who performed the autopsy, absent a compelling necessity.[5] Accord, *State v. Tims,* 9 Ohio St. 2d 136, 224 N.E.2d 348 (1967);[6] *Bennett v. State,*

---

[5] The Commonwealth does not, nor could it, argue that the medical examiner's temporary absence from his official duties to attend a convention constitutes a sufficiently compelling necessity to override the constitutional mandate. See 5 J. Wigmore, Evidence §§ 1421, 1521 (3d ed. 1940).

[6] "This right of confrontation includes the right of cross-examination of the person who is the actual witness against him. If applicable in a criminal case, the Business Records as Evidence Act

448 P.2d 253 (Okla. Crim. App. 1968);[7] *Robison v. State,* 430 P.2d 814 (Okla. Crim. App. 1967) (alternate holding).[8] Of course, when the examiner does testify and is subject to cross-examination, his report may be used. See *Commonwealth v. Ross,* 413 Pa. 35, 39-44, 195 A.2d 81, 82-85 (1963).

In some cases, production of a critical witness may be inconvenient. However, we stress that "[t]he constitutional right of confrontation and cross-examination . . . cannot be sidestepped because it happens to be convenient for one of the parties." *Holman v. Washington,* 364 F.2d 618, 623 (5th Cir. 1966). "The difficulty of obtaining witnesses is not sufficient grounds for liberalizing an exception to the hearsay rule if the ef-

___

denies him such right. The act permits the introduction of evidence in the form of records without requiring the presence of the person who actually made the examination. It is this person who is the actual witness against the accused, not the custodian, and it is this witness that the accused has the right to cross-examine to determine his qualifications and to determine whether the tests were made properly." *State v. Tims,* 9 Ohio St. 2d 136, 138, 224 N.E.2d 348, 351 (1967).

[7] "To summarize our holding in the instant case, we are of the opinion that the hearsay written opinion of a . . . physician is not admissible . . . merely because it has been properly authenticated . . . when the . . . physician is not present in court and subject to cross-examination by the adverse party. In order to be admitted into evidence . . . the . . . records must otherwise be admissible and hearsay statements as to opinions are not rendered admissible where the declarant is not present in court and the opposing party has no opportunity to cross-examine." *Bennett v. State,* 448 P.2d 253, 264-65 (Okla. Crim. App. 1968).

[8] "The purpose of this constitutional guarantee is to insure to every person tried for the commission of a crime the right to cross-examine persons making statements which are admitted into evidence against the defendant. In the instant case defendant was not accorded the right to cross-examine the author of that portion of the medical record admitted into evidence against him and the denial of this right constituted error." *Robison v. State,* 430 P.2d 814, 818 (Okla. Crim. App. 1967).

fect of such liberalization is to deny an accused a fair trial. . . . [E]xpediency is not a sound ground upon which a denial of a constitutional right may be based." *State v. Tims,* 9 Ohio St. 2d 136, 138, 224 N.E.2d 348, 350 (1967).

It has aptly been stated that "[t]he Government should produce the maker of any important record wherever possible . . . ." *United States v. Johns-Manville Corp.,* 225 F. Supp. 61, 63 (E.D. Pa. 1963) (VAN DUSEN, J.). Here, the Commonwealth could have produced the maker of the autopsy report, but did not. Its failure to do so clearly was error of constitutional dimension.

The Commonwealth, urges, however, that on this record, we should view the error as harmless. This argument is meritless. The United States Supreme Court has specifically held that " '[a] denial of cross-examination without a waiver * * * would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.' " *Smith v. Illinois,* 390 U.S. 129, 131, 88 S. Ct. 748, 750 (1968) (quoting *Brookhart v. Janis,* 384 U.S. 1, 3, 86 S. Ct. 1245, 1246 (1966)).

Judgment of sentence reversed and a new trial granted.

Mr. Chief Justice JONES, Mr. Justice EAGEN and Mr. Justice POMEROY concur in the result.