380 A.2d 798

**COMMONWEALTH of Pennsylvania**

**v.**

**William A. GREEN, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 8, 1976.

Decided Dec. 2, 1977.

Walton's testimony would not have been merely cumulative in nature.

John W. Packel, Assistant Public Defender, and Benjamin Lerner, Defender, Philadelphia, for appellant.

Steven H. Goldblatt and Deborah E. Glass, Assistant District Attorneys, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

This appeal arises from appellant's conviction, in a jury trial, of rape, involuntary deviate sexual intercourse and criminal conspiracy, and from the denial of post-trial motions. Appellant raises four contentions: first, that the trial court erred in admitting portions of the hospital report made upon examination of the prosecuting witness, Patricia Ann Kimbrough Miller; second, that certain of the Assistant District Attorney's closing remarks constituted prejudicial expressions of personal belief; third, that the trial judge's charge on credibility improperly emphasized appellant's interest in the outcome of the case; and fourth, that the trial judge erroneously summarized the evidence relating to appellant's flight from the arresting officer in instructing the jury on the weight to be accorded that evidence. For the reasons that appear below, we affirm.

Shortly before midnight on March 11, 1975, Patricia Kimbrough Miller entered Bob's Bar at 27th and Popular Streets in Philadelphia. She sat down at the bar and entered into a

conversation with appellant and a woman identified as his wife. During the ensuing discussion the Greens invited Mrs. Miller to attend a marijuana "smoking party," to which she agreed. The three left the bar at approximately 1:00 A.M. on March 12 and proceeded by car to the location where the party was to take place. About one block from the bar, they stopped to pick up appellant's co-defendant, James Stukes.

As they continued on their way, ostensibly to a marijuana party, Mrs. Miller was informed that they first had to check on Mrs. Green's children. Green, Stukes and the two women entered a second floor apartment in North Philadelphia and, while Mrs. Miller was left alone in the living room, the others went into another room. A short time later appellant and Stukes entered the room followed by two naked men. Stukes grabbed Mrs. Miller's neck and warned her to remain quiet while appellant removed her clothing. Appellant then had vaginal intercourse with her and she was orally sodomized by Stukes. Mrs. Miller was beaten about the head and lost consciousness, returning to her senses briefly when she was forced to submit to anal penetration by an unidentified assailant. Early the next morning Mrs. Miller again regained consciousness, and finding herself alone, dressed and fled from the building. Appellant and Stukes were arrested the following day.

Appellant first contends that a portion of the medical report of Mrs. Miller's examination should have been excluded because it constituted medical opinion.[1] The examining physician noted on the report that Mrs. Miller exhibited excoriations of the left elbow and right forehead. We agree that the Uniform Business Records as Evidence Act[2]

---

1. Appellant concedes that the medical record as a whole was admissible under the Uniform Business Records as Evidence Act, Act of May 4, 1939, P.L. 42, No. 35, § 2, 28 P.S. § 91b.

2. The Act provides:

   "A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the

does not make competent matters contained in medical records which are otherwise violative of the rules of evidence. *Broadbent v. A. Moe & Co., Inc.,* 208 Pa.Super. 28, 33, 220 A.2d 340, 342 (1966). "The law is clear that hospital records are admissible to show [only] the fact of hospitalization, treatment prescribed, and symptoms given." *Commonwealth v. DiGiacomo,* 463 Pa. 449, 455, 345 A.2d 605, 608 (1975). We are not persuaded, however, that appellant's characterization of the term "excoriation" as inadmissible medical opinion is accurate.

Medical diagnosis or opinion entails a "conclusion concerning a condition not visible but reflected circumstantially by the existence of other visible and known symptoms." *Paxos v. Jarka Corp.,* 314 Pa. 148, 153–54, 171 A. 468, 471 (1934). The existence of a readily observable physical condition, the evaluation of which does not require a complex application of technical knowledge, can as easily be ascertained by the lay person as by the trained physician. *Cf., Paxos v. Jarka Corp.,* supra at 153–54, 171 A. at 470–71. The use of the term "excoriation" by the examining physician was merely descriptive of the symptoms exhibited by the prosecuting witness and did not involve a medical diagnosis or opinion.[3]

We may quite easily dispose of appellant's assertion that the qualifications of the admitting physician were not adequately established. It is unnecessary to qualify as an expert, merely because he is a physician, one who makes a statement that a lay person would be competent to utter.

Appellant next contends that he was denied his constitutional right to confront and cross-examine the examining physician. In *Paxos v. Jarka Corp.,* 314 Pa. 148, 171 A. 468

sources of information, method and time of preparation were such as to justify its admission."
Act of May 4, 1939, P.L. 42, No. 35, § 2, 28 P.S. § 91b.

**3.** The word "excoriation" is quite simply defined as "any superficial loss of substance, such as that produced on the skin by scratching." *Dorland's Illustrated Medical Dictionary* (24th ed. 1965) at p. 553. It is thus a word of common usage in the English language rather than a medical term of art.

(1934), our Supreme Court pointed out the danger of admitting medical *opinion* without affording the defendant the opportunity to cross-examine the declarant concerning his qualifications and the accuracy of his diagnosis. *See Paxos v. Jarka Corp.,* supra 314 Pa. at 154, 171 A. at 471. However, no opinion was involved here and our courts have held many times that medical records are admissible to show the fact of hospitalization treatment prescribed and symptoms given. *Commonwealth v. DiGiacomo,* 463 P. 449, 345 A.2d 605 (1975). The medical records were, therefore, properly admitted into evidence.[4]

■ Appellant also contends that the prosecutor made several prejudicial remarks in his closing argument to the jury. Only one of these statements was objected to at trial, and raised in post-trial motions. The others were therefore, waived. *Commonwealth v. Gilman,* 470 Pa. 179, 368 A.2d 253 (1977); *Commonwealth v. Crawford,* 461 Pa. 260, 336 A.2d 275 (1975); *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974). The one remark of which we may take cognizance on appeal is that made by the prosecutor in referring to the testimony of two defense witnesses that they and Mrs. Miller had gone to the V and R Bar after leaving Bob's Bar. The Assistant District Attorney stated, "I don't believe the others [defense witnesses Vicky Vinson and Donna Kinley] ever went to the V and R Bar." He immediately rephrased the statement by saying, "I do not believe that you have to believe that the others ever went to the bar." N.T., November 7, 1975, at 51.

■ Looking at the Assistant District Attorney's remarks in their context, as we must, it is clear that his

4. As to appellant's assertion that the contested portion of the medical record was irrelevant, appellant failed to advance this ground for exclusion at trial. "It has long been the rule in this jurisdiction that if the ground upon which an objection is based is specifically stated, all other reasons for its exclusion are waived, and may not be raised post trial." *Commonwealth v. Stoltzfus,* 462 Pa. 43, 60, 337 A.2d 873, 881 (1975) (citations omitted).

expression of personal belief was harmless error.[5] The prosecutor immediately attempted to negate the effect of his earlier statement by stating, "I do not believe *that you have to believe* that the others ever went to the bar." N.T. November 7, 1975, at 51 (emphasis added) While the latter sentence still contains the offending "I believe," it also manages to convey the impression that the jury had to decide whether to believe the defense witnesses' testimony. That, of course, is uniquely within the province of the factfinder. *Commonwealth v. Potter,* 445 Pa. 284, 286, 285 A.2d 492, 493 (1971). Whatever minimal prejudice the prosecutor's remark may have engendered was harmless in light of the prosecutor's curative statement and the trial judge's charge to the jury. *See* N.T., November 10, 1975, at 4 and 5.

Appellant's remaining allegations of error involve the lower court's charge to the jury on the credibility of the defendants [6] and on the evidence of their flight from

5.  It is unprofessional conduct for a prosecuting attorney to state his personal beliefs to the. jury. *See* D.R. 7–106(c)(4); American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function, § 5.8(b) (Approved Draft, 1971). *See also, Commonwealth v. Stasko,* 471 Pa. 373, 370 A.2d 350 (1977). Not every intemperate and improper remark by the prosecutor will require a new trial, however. *Commonwealth v. Perkins,* 473 Pa. 116, at 133, 373 A.2d 1076, at 1085 (1977). The effect of the remarks must be evaluated in the context in which they occurred. *Commonwealth v. Perkins,* supra 473 Pa. at 134, 373 A.2d at 1085, citing *Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975). Only if the unavoidable effect of the offending language would be to prejudice the jury and form in their minds a "fixed bias and hostility toward the defendant so that they could not weigh the evidence and render a true verdict" would reversible error exist. *Commonwealth v. Simon,* 432 Pa. 386, 394, 248 A.2d 289, 292 (1968). "The cases that have held that the prejudice arising from the prosecutor's statements demanded reversal, have done so on the basis of fairly strong or abusive language." *Commonwealth v. Chandler,* 237 Pa.Super. 19, 25, 346 A.2d 579, 582 (1975).

6.  Appellant admits that the trial judge did discuss the prosecuting witness' credibility, but contends that he erroneously emphasized the defendant's interest in the outcome of the case. It is not error, however, for the trial judge to instruct the jury that it may consider a defendant's interest in the outcome of a case in evaluating his credibility. *Commonwealth v. Matt,* 248 Pa.Super. 538, 375 A.2d 371

the arresting officer. Viewed as a whole, the charge to the jury made it abundantly clear that both Mrs. Miller's testimony and that of the defendants were to be scrutinized with a jaundiced eye. *See* N.T., November 10, 1975, at 9, 11, 17 and 19. Likewise, the trial judge impartially instructed the jury on the weight to be accorded the conflicting testimony concerning appellant's motive for fleeing from the arresting officer. The jury charge dealt with both the inference of guilt arising from flight and the defendants' testimony that they were fleeing from Mrs. Miller's husband who appeared to have a pistol in his hand[7] and was an accurate summary of the testimony at trial. *See* N.T., November 10, 1975, at 21 and 22.

For the foregoing reasons, the judgment of sentence is affirmed.

(1977); *Commonwealth v. Dolny,* 235 Pa.Super. 241, 342 A.2d 399 (1975).

7. Mr. and Mrs. Miller were with the arresting officer at the time of appellant's apprehension.