405 A.2d 1262

**COMMONWEALTH of Pennsylvania**

**v.**

**Robert L. SEVILLE, Appellant.**

Superior Court of Pennsylvania.

Submitted March 12, 1979.

Decided June 13, 1979.

588

Samuel K. Gates, York, for appellant.

William T. Hast, Assistant District Attorney, York, for Commonwealth, appellee.

Before SPAETH, HESTER and MONTGOMERY, JJ.

HESTER, Judge:

Following a one-day jury trial, appellant Robert L. Seville was found guilty of driving a motor vehicle under the influence of intoxicating liquor and driving under suspension.[1] Part of the evidence against appellant consisted of a hospital report containing the results of a blood alcohol test administered to him shortly after his arrest. Appellant contends on this appeal that the report should not have been admitted without the presence at trial of the hospital technician who administered the test. We find no error in the use of the report and will therefore affirm.

Testimony adduced at trial revealed the following. In the early morning hours of February 6, 1977, Officer Craig A. Damon of the Jackson Township Police Department, York County, was on routine patrol on Biesecker Road when he noticed a 1972 Gremlin stopped in the middle of the road. As he approached from behind, Damon heard "the roar of the [car's] engine" and saw the Gremlin pull up about 60 feet and stop on the right berm of the road. Damon asked the driver, appellant herein, to get out of the car and the officer immediately noticed appellant's slurred speech, flushed face, bloodshot eyes, and a very strong odor of alcohol. Appellant was arrested and transported to State Police barracks where officers were unsuccessful in obtaining a breath sample from him. Appellant was then taken to York Hospital for extraction of a blood specimen. A quantity of blood was there drawn from his arm and placed, by lab technician Katie Potts, into a spectrophotometer for enzyme

1. Vehicle Code, Act of June 17, 1976, P.L. 162, No. 81, § 1, 75 Pa.C.S.A. §§ 3731 and 1543, respectively.

analysis. The results showed a blood alcohol content of .239 grams percent.

The Commonwealth's sole medical witness at trial was Dr. Jacinto Gochoco, Chairman of the Department of Pathology at York Hospital and, as such, custodian over all lab records. Dr. Gochoco was not present when the sample was drawn and tested but testified he exercises general supervision over such lab procedures. Through Dr. Gochoco, the Commonwealth established a chain of custody of the sample as well as the simple and routine procedure employed in taking blood tests to determine alcohol content. After the blood is drawn, it is placed in a vial, with appropriate markings for identification, and sequestered in a safety deposit refrigerated area, available only to lab personnel. N.T. 5. Thereafter, a technician administers the enzyme analysis, makes certain mathematic calculations, and records the results in a written hospital record. These records, as attested by Dr. Gochoco, are prepared in the regular course of the hospital business and kept in exclusive custody of the Department of Pathology in medical-legal cases. N.T. 15. Mrs. Katie Potts, the technician who performed the enzyme analysis and recorded the results, was found by Dr. Gochoco to be a "long-time, properly certified . . . employee of the lab". N.T. 13. The records containing the results of appellant's blood test were brought to court by Dr. Gochoco and admitted into evidence, over appellant's repeated objections.

■ Hospital records are generally admitted at trial as an exception to the hearsay rule under the Uniform Business Records as Evidence Act.[2] Our courts, however, have recognized that not all information contained in such records is

2. The Act provides:
   A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.
   Act of May 4, 1939, P.L. 42, No. 35, § 2 (28 P.S. § 91b).

*ipso facto* admissible and hence we have embraced a functional approach focusing on the purpose for which such records are offered. Thus, it is clear that hospital records are admissible to show the fact of hospitalization, treatment prescribed, and symptoms given, *Platt v. John Hancock Mut. Life Ins. Co.,* 361 Pa. 652, 66 A.2d 266 (1949); *Commonwealth v. Green,* 251 Pa.Super. 318, 380 A.2d 798 (1977); *Commonwealth v. Campbell,* 244 Pa.Super. 505, 368 A.2d 1299 (1976), but that opinions, diagnoses, and conclusions contained therein are not admissible under the Act, *Commonwealth v. DiGiacomo,* 463 Pa. 449, 345 A.2d 605 (1975); *Commonwealth v. McCloud,* 457 Pa. 310, 322 A.2d 653 (1974); cf. McCormick, Handbook of Law of Evidence, § 732 (2d ed, 1972); compare, *Myers v. Genis,* 235 Pa.Super. 531, 344 A.2d 691 (1975). The rationale for excluding medical opinion in hospital records lies in the fact that such evidence is expert testimony and is "not admissible unless the doctor who prepared the report is available for in-court cross-examination regarding the accuracy, reliability, and veracity of his opinion." *Commonwealth v. McNaughton,* 252 Pa.Super. 302, 307, 381 A.2d 929, 931 (1977) (medical record, showing appellant was in possession of morphine, held not admissible since conclusion that drug was morphine was expert opinion and required presence in court of author of report); *DiGiacomo,* supra (hospital records showing diagnosis of injuries of patient, held inadmissible); *McCloud,* supra (hospital record, showing cause of death, held inadmissible as opinion evidence; decided on constitutional grounds). See also, *Commonwealth v. Garcia,* 478 Pa. 406, 387 A.2d 46 (1978); *Lane v. Samuels,* 350 Pa. 446, 39 A.2d 626 (1944). Medical opinions and conclusions are often the subject of conflicting judgment among qualified physicians and hence should be subject to "the severest of examinations to test [their] strength". *Paxos v. Jarka Corp.,* 314 Pa. 148, 154, 171 A. 468, 471 (1934). Such stringent cross-examination to challenge the correctness of the opinion and qualifications of the assertor is only possible if the physician is present in court.

■ No such doubts as to reliability and accuracy are entertained when a record is offered merely to prove facts, such as the event of hospitalization, treatment prescribed, symptoms, given, or the existence of some readily ascertained substance or chemical within the body. See, e. g. *Commonwealth v. Campbell,* supra (hospital records, showing existence of spermatozoa in rape victim, held properly admitted as fact, via medical records librarian); *Commonwealth v. Mobley,* 450 Pa. 431, 301 A.2d 622 (1973) (hospital record, showing defendant had been hospitalized at certain times for certain wounds, held admissible as facts); *Commonwealth v. Green,* supra (hospital record, showing rape victim exhibited "exorciations of elbow and forehead", held admissible as fact). See also, *Platt,* supra. The hearsay exception permitting admission of hospital records for these purposes is justified on the same grounds as those underlying admission of any other business record:

> Unusual reliability is regarded as furnished by the fact that in practice regular entries have a comparatively high degree of accuracy (as compared to other memoranda) because such books and records are customarily checked as to correctness by systematic balance-striking, because the very regularity and continuity of the records is calculated to train the recordkeeper in habits of precision, and because in actual experience the entire business of the nation and many other activities constantly function in reliance upon entries of this kind.

McCormick, Handbook of Law of Evidence, § 306 (2d ed, 1972); *Commonwealth v. DiGiacomo,* supra 463 Pa. 449, 457–8, 345 A.2d 605, 609 (Roberts, J., concurring). It is this element of trustworthiness, serving in place of the safeguards ordinarily afforded by confrontation and cross-examination, which justifies admission of the writing or record without the necessity of calling all the persons who may have had a hand in preparing it.

Similarly, the manner in which hospital records are maintained carries safeguards "at least as substantial as the

guarantees of reliability of the records of business establishments". *McCormick,* supra, at § 313. The practice of recording facts has been standardized in the modern hospital and "these recorded facts are routinely used to make decisions upon which the health and life of the patient depend". id. Current experience teaches the practice of drawing and testing of blood for alcohol content is a matter particularly within the ambit of basic and routine hospital procedure. The standardized, precise calculations used in arriving at a final result leave little room for error. "Providing a careful technique is used, blood and alcohol tests should not have an error exceeding plus or minus three per cent in alcohol concentrations of 0.1 per cent and over". MacDonald, Alcoholism as a Medicolegal Problem, 11 Clev.-Mar.L.Rev. 39, 51 (1962). Other courts have held that, because of the simple and precise manner by which the level of intoxication may be determined, and the routine procedures by which hospitals administer and record such events, results of blood alcohol tests may be admitted through the custodian of the records without the presence of the technician who actually performed the test.[3] *Thomas v. Hogan,* 308 F.2d 355 (4 Cir., 1962); *State v. Martorelli,* 136 N.J.Super. 449, 346 A.2d 618 (1975); *Iovino v. Green Bus Lines,* 277 App.Div. 1002, 100 N.Y.S.2d 148 (1950); *Nichols v. McCoy,* 38 Cal.2d 447, 240 P.2d 569 (1952).[4] cf. Annos., 80 A.L.R.3d 456, 69 A.L.R.2d 22.

**3.** The records must, of course, otherwise satisfy the requirements of the Business Records as Evidence Act. Appellant herein concedes the proper foundation was laid in the instant case for admission under the § 91b. Nor does he challenge the reliability of the spectrophotometer and enzyme analysis used in determining the level of intoxication in his blood. See, 75 Pa.C.S.A. § 1547(c).

**4.** The York County Court of Common Pleas, out of which the instant case arose, has previously decided this question in favor of the records' admissibility. *Commonwealth v. House,* 84 York 8 (1970), citing *Fauceglia v. Harry,* 409 Pa. 155, 185 A.2d 598 (1962). Our Court has determined that a medical report such as the one here at issue is admissible in a preliminary hearing through the prosecuting officer alone. *Commonwealth v. Rick,* 244 Pa.Super. 33, 366 A.2d 302 (1976).

In the instant case, Dr. Gochoco testified at length as to the simple and standard procedures whereby blood is drawn and tested and results calculated and recorded. There is nothing in this record or in the pertinent authorities which would suggest the result of a blood alcohol test is a matter "seriously in issue and the subject of conflicting opinion by qualified physicians". *McCloud,* supra, 457 Pa. at 312, 322 A.2d at 655. Rather, we are persuaded the test is in the realm of medical fact. Courts and legislatures have now accepted the blood test as "undeniably accurate"[5] and we will not burden the Commonwealth with producing witnesses to establish a fact which experience has proven to be trustworthy.[6]

Judgment of sentence affirmed.

MONTGOMERY, J., concurs in the result.

SPAETH, J., files a concurring statement.

SPAETH, Judge, concurring:

I concur in the result reached by the majority. I note also that this case presents a question of the constitutional right to confrontation, a question I discussed at greater length in dissent in *Commonwealth v. Campbell,* 244 Pa.Super. 505, 514, 368 A.2d 1299, 1303 (1976).

**5.** Slough and Wilson, Legal By-Products of Chemical Testing for Intoxication, 11 Clev.-Mar. L. R. 1, 7 (1962). Our legislature has, of course, accepted the blood test as an accurate measure of the degree to which a person is under the influence of intoxicating liquor. 75 Pa.C.S.A. 1547(c).

**6.** We do not address the question of whether the hospital records, despite falling within the scope of the Business Records as Evidence Act, may have nonetheless deprived appellant his right to confront his accusers. U.S.Const. Amend. VI. See, *Commonwealth v. McCloud,* supra; *Commonwealth v. McNaughton,* supra, 252 Pa.Super. 302, 313–15, 381 A.2d 929, 934–5 (Spaeth, J. concurring). At no time in these proceedings, either below or on appeal, has appellant raised the constitutional issue and we will not consider arguments which the parties themselves have not employed. *Wiegand v. Wiegand,* 461 Pa. 482, 337 A.2d 256 (1975).