630 A.2d 446

COMMONWEALTH of Pennsylvania

v.

Chong XIONG, Appellant.

Superior Court of Pennsylvania.

Argued June 7, 1993.

Filed Aug. 19, 1993.

David Zuckerman, Philadelphia, for appellant.

Joan Weiner, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before ROWLEY, President Judge, and WIEAND, CIRILLO, DEL SOLE, TAMILIA, KELLY, POPOVICH, HUDOCK and FORD ELLIOTT, JJ.

DEL SOLE, Judge:

This case is presented to our court for the determination of whether Appellant's trial counsel stipulated to the admissibility of a notation contained in a medical record which stated that the child victim had "no hymen". We find that Appellant's counsel did stipulate to the admission of the notation and therefore we hold that Appellant's claim is waived. Appellant's related claim of ineffectiveness of trial counsel likewise fails because we hold that the notation at issue was admissible under the Uniform Business Records as Evidence Act.

Appellant, Xiong Chong, was convicted of rape and corruption of a minor. The charges stemmed from allegations lodged against him by his twelve year old step daughter. The record reveals that the young victim was born in Thailand and moved to this country with her mother. Shortly thereafter, when the victim was two years of age, Appellant, also a Laotian immigrant, and the victim's mother, married. During the course of their marriage, they had eight children. Testimony offered at trial, established that the family lived in a four room house and, in accordance with Laotian custom, slept together in one room.

The victim claimed that often during the night, her father would wake her up and sexually molest her. She stated that her mother slept through these incidents and therefore was unaware of the attacks. She also testified that additional acts of molestation occurred in the family's living room, kitchen and bathroom.

After enduring this abuse for more than three years, the victim told her family's minister and his wife about the assaults. The couple took the victim to Children's Hospital in Philadelphia where she was examined in the hospital's emergency room and subsequently, charges of rape and corrupting the morals of a minor were filed against Appellant. Following a jury trial, Appellant was convicted of all of the charges and was sentenced to a five to ten year term of imprisonment for the rape charges and a one to two year sentence for the

morals charge. Appellant's post-trial motions were thereafter denied and he filed the present appeal.

Appellant first claims that he properly preserved, for our review, the issue of whether the trial court erred in allowing the admission of the physician's report that was prepared in conjunction with the victim's physical exam, as a business record, where the report indicated that the victim had no hymenal tissue. Appellant alleges that the report was inadmissible under the Uniform Business Records as Evidence Act because it contained opinion evidence rather than merely factual information. Appellant claims that because the treating physician did not testify at trial regarding the contents of the report, Appellant was denied his constitutional right to confrontation and cross-examination of an adverse witness.

A close examination of the record, however, leads us to the conclusion that Appellant stipulated to the admission of the report into evidence. Just prior to calling a medical expert, Dr. DeJong, to the stand, the Commonwealth sought to enter the victim's medical record into evidence and Appellant's counsel objected. Counsel stated that while he was willing to stipulate to the custodian of records' testimony, he was unwilling to stipulate to admission of the report on the grounds that he had not been afforded the opportunity to cross-examine the doctor who prepared it. A discussion was then held off the record in the trial judge's chambers and the defense's motion was denied. The following exchange was then held on the record.

MS. RUIZ: Your Honor, the Commonwealth's next witness will be Dr. Allan DeJong. However, your Honor, before DeJong actually testifies, there is a stipulation by and between counsel as to [the victim's] hospital records from the Children's Hospital of Philadelphia. And I will read that stipulation to the jury. I don't know if the Court would like to explain the stipulation first before I read it.

THE COURT: Well, a stipulation, ladies and gentlemen, means that the lawyers agree that if a witness is called, that he or she would testify to the particular facts.

Specifically what the lawyers are stipulating or agreeing to is that on—Miss Ruiz will tell you the particular day—that [the victim] went to a particular hospital and these are in fact the medical records that exist as a result of that visit to a hospital.

Go ahead [M]iss Ruiz.

MS. RUIZ: Thank you your Honor. If the custodian of records from Children's Hospital of Philadelphia were to testify that the emergency room records of Children's Hospital of Philadelphia which are six pages are kept in the ordinary course of Children's Hospital business. And that these records do in fact indicate that [the victim] was seen on March 12, 1990, in the early evening hours.

And that when she was seen in the emergency room, she was seen by a doctor John Pope who conducted a physical exam of [the victim]. And that specifically he did examine the child's genital area; that is, the vaginal, cervix, the uterus and the rectum, and that the vagina was found—

MR. WILSON: Objection, your Honor. That's not part of the stipulation.

THE COURT: Miss Ruiz, would you speak to Mr. Wilson and be sure of the exact nature of the stipulation, please.

(Pause.)

MS. RUIZ: Your Honor, could we see you at side bar?

THE COURT: Sure.

MS. RUIZ: I think maybe we should go in the back.

(The following occurred in chambers:)

THE COURT: Yes.

MS. RUIZ: Your Honor, it is my understanding that the stipulation is that Dr. Pope did a genital examination and found the child had no hymen.

THE COURT: What is the stipulation to your way of thinking?

MR. WILSON: Judge, I understood that what I was objecting to was we have a notation. I don't know who made the

notation; that there's no signature, there's several names of people who talked to her or examined her.

THE COURT: I have a document in front of me, it's three pages. This is called the physician's sexual assault checklist. Page one appears to be a history, page two is a diagram, and that's the page that no hymen is on, and page three has an impression and the signature of Dr. Pope. It all appears to be in the same handwriting to me.

The medical records are of, I guess, a couple of different categories. There's emergency department record which— so you're not stipulating to the fact that he found there to be no hymen because you're not certain that those are his findings, right?

MR. WILSON: That's correct, Judge.

THE COURT: Well, assuming it's reflected in the medical records, isn't that admissible that there's no hymen?

MR. WILSON: Judge, I would have no objection to the jury being told that the records have a notation no hymen.

THE COURT: Because that notation is admissible that the records have no hymen, period.

MR. WILSON: That's right.

THE COURT: And so what you're objecting to is the fact that she's representing that Dr. Pope made that determination as opposed to someone else?

MR. WILSON: That's correct.

THE COURT: I'm not the finder of fact. If I were the finder of fact, looking at the incredible similarity of handwriting, I would find that this is Dr. Pope's handwriting. However, I'm not the fact finder and so I will tell the jury that this is what's reflected in the records, period, or you can tell them that this is what's reflected in the records, that she has no hymen.

When your expert testifies it doesn't make a bit of difference really that it came from Dr. Pope or didn't come from Dr. Pope because that's not the significance, is not, and who wrote it.

MR. WILSON: It is in one respect, Judge. It does make a difference what tissue was or was not there, according to the medical literature.

THE COURT: I understand the presence or absence of remnants of tissue makes a difference, but the problem is that whether Dr. Pope wrote this is or a nurse wrote this, you don't know, which is obviously what you're going to argue, you don't know what they mean when they write no hymen, so it doesn't matter who it comes from.

MR. WILSON: Right. That's why I don't want to stipulate that it comes from Dr. Pope.

THE COURT: Fine.

MR. WILSON: It's as simple as that. That's all.

MS. RUIZ: Can I say that according to the physician's sexual assault list she was found to have no hymen?

MR. WILSON: That's fine. I can stipulate to that.

THE COURT: That's the only other thing that you have left to say on the stipulation?

MS. RUIZ: Yes, Judge. Although, Judge, note my objection, that as the court noted, that it's the same writing as Dr. Pope.

THE COURT: I know that.

MR. WILSON: But there's also two names written in the same—

MS. RUIZ: Tony Morrow is the social worker, Mr. Wilson. You can read that.

THE COURT: Let's define the issues and let's argue about things that genuinely matter. We have an agreement on this so let us proceed.

(The following occurred in open court in the presence of the jury).

THE COURT: Go ahead, Miss Ruiz.

MS. RUIZ: Your Honor, it is indicated in the physician's sexual assault checklist that the child was found to have no hymen. And that everything else as far as the genital exam was normal.

And, Your Honor, that is the extent of the stipulation.

THE COURT: Is that stipulated to, Mr. Wilson?

MR. WILSON: So stipulated, your Honor.

Therefore, it is clear that the nature of defense counsel's objection to the admission of the victim's medical record at trial, centered on the identity of the report's author rather than its content. Counsel unmistakably stated that he had no objection to the admission of the "no hymen" notation contained in the record. Accordingly, we can only conclude that the claim now raised by Appellant regarding the notation has been waived.

Appellant repeatedly argues that the notation was hearsay and that trial counsel never abandoned his objection to the physician's hearsay testimony, yet, further evidence of counsel's stipulation to the admissibility of the contents of the physician's report is found in that portion of the trial transcript that contains medical expert, Dr. DeJong's testimony.

During direct examination of Dr. DeJong, the Commonwealth showed him the physician's checklist indicating that the victim did not have a hymen. The Commonwealth then asked the doctor to assume certain facts i.e., that the victim was twelve years old when examined, that she had alleged that she was the victim of sexual assault and that she did not have a hymen. After setting forth the factual framework, the Commonwealth asked the doctor whether it was his opinion that it was normal for a child of that age not to have a hymen. The physician responded that it was not. We point to this portion of the witness' testimony for a very specific reason. If, in fact, as Appellant argues, his stipulation went only to testimony that would have been offered by the custodian of the medical records, and not to the contents of the report, Appellant's counsel would have objected to the Commonwealth's factual assertion that the victim had no hymen and to the witness' discussion of the same. At no time, however, did counsel object to the assertion. Therefore, we find no support in the record for Appellant's claim that counsel's stipulation was

limited to testimony that would have been offered by the custodian of records.

In anticipation of our holding today, Appellant's counsel sets forth an alternative argument urging us, that, in the event we find that Appellant's claim has been waived, we hold that Appellant's trial counsel was ineffective for not preserving it.

Before addressing this claim, we note that although Appellant's present counsel did not represent Appellant at trial, he is affiliated with the same public defender's office that represented Appellant at trial, and therefore, by raising trial counsel's ineffectiveness he is really alleging his own ineffectiveness. *Commonwealth v. Knight*, 421 Pa.Super. 485, 618 A.2d 442 (1992). "In this context, the law requires a remand for the appointment of new counsel *except* (1) where it is clear from the record that counsel was ineffective or (2) where it is clear from the record that the ineffectiveness claim is meritless." (emphasis in original) *Id.*, 421 Pa.Super. at 488, 618 A.2d at 443 (1992) *citing Commonwealth v. McBee*, 513 Pa. 255, 261, 520 A.2d 10, 13 (1986). In determining counsel's ineffectiveness, we first examine whether the issue foregone by trial counsel was of arguable merit, and if so, whether counsel had a reasonable basis for failing to assert it. If we find that counsel did not have a reasonable basis for the omission, we must then determine whether Appellant was prejudiced by his counsel's inaction. *Commonwealth v. Davis*, 518 Pa. 77, 83, 541 A.2d 315, 318 (1988).

Appellant asserts that there was "no plausible explanation that would justify abandoning a properly preserved claim after an adverse ruling and thereby acquiesce[ing] to the admission of disputed and damaging evidence in violation of his client's right to confront and cross-examination [sic] witnesses against him. Such a failure by counsel would deny appellant his state and federal constitutional rights to the effective assistance of counsel." (Appellant's brief at 20–21). To support this notion, counsel argues that the statement in the medical report that the victim had "no hymen" was opinion testimony and therefore inadmissible under the Uniform Business Records as

Evidence Act, 42 Pa.C.S.A. § 6108.[1] Counsel adds that if trial counsel had cross-examined the physician who examined the victim, counsel would have been able to call into attention the accuracy of the "no hymen" notation.

In the past, this court has had numerous occasions to address the issue of what constitutes opinion as opposed to fact for purpose of admission of a hospital record under the Uniform Business Records as Evidence Act. "Under this exception, hospital records have been admitted to show the fact of hospitalization, treatment prescribed and symptoms found." *Commonwealth v. Hemingway,* 369 Pa.Super. 112, 118, 534 A.2d 1104, 1107 (1987) *citing Commonwealth v. DiGiacomo,* 463 Pa. 449, 345 A.2d 605 (1975) (additional citations omitted). Opinion evidence contained in hospital records, however, is not admissible. *Id.* "The rationale for excluding medical opinion in hospital records lies in the fact that such evidence is expert testimony and is 'not admissible unless the doctor who prepared the report is available for in-court cross-examination regarding the accuracy, reliability and veracity of his opinion.'" *Commonwealth v. Seville,* 266 Pa.Super. 587, 591, 405 A.2d 1262, 1264 (1979) *citing Commonwealth v. McNaughton,* 252 Pa.Super. 302, 307, 381 A.2d 929, 931 (1977).

Drawing the line between what is fact and what is opinion is often difficult and has led to varying results. See *Williams v. McClain,* 513 Pa. 300, 520 A.2d 1374 (1987) (hospital record that contained impressions of social worker that plaintiff's pain may have a psychosomatic source was found to be inadmissible); *Commonwealth v. DiGiacomo,* 463 Pa. 449, 345 A.2d 605 (1975) (medical records custodian's testimony regarding diag-

1. The Uniform Business Records as Evidence Act provides in pertinent part as follows:

   (b) General Rule.—A record of an act, condition or event, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition, or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

   42 Pa.C.S.A. § 6108(b).

nosis, as it was contained in hospital record, of injuries sustained by murder victim was inadmissible); *Commonwealth v. McCloud*, 457 Pa. 310, 322 A.2d 653 (1974) (autopsy report offered to prove essential element of crime or to connect appellant to crime where appellant was denied opportunity to cross-examine physician who prepared report, was inadmissible); *Commonwealth v. Hemingway*, 369 Pa.Super. 112, 534 A.2d 1104 (1987) (results of "rape kit", excluding the finding of spermatozoa, were held to be wrongly admitted into evidence without testimony of criminalist who conducted tests); *Commonwealth v. Campbell*, 244 Pa.Super. 505, 368 A.2d 1299 (1976) (hospital record stating that spermatozoa was found in victim's vagina was treated as fact and therefore was admissible); *Commonwealth v. Seville*, 266 Pa.Super. 587, 405 A.2d 1262 (1979), (medical report containing results of blood alcohol test was properly admitted into evidence even though technician who administered the test did not testify at trial); *Commonwealth v. McNaughton*, 252 Pa.Super. 302, 381 A.2d 929 (1977); (hospital record was inadmissible where it was the sole evidence offered by the Commonwealth to prove an essential element of the offense charged); *Commonwealth v. Green*, 251 Pa.Super. 318, 380 A.2d 798 (1977) (medical report stating that rape victim exhibited "excoriations" to elbow and forehead did not involve a medical diagnosis or opinion and therefore was admissible under Uniform Business Records as Evidence Act).

In *Commonwealth v. Green, supra*, this court defined the terms "medical diagnosis" and "opinion" as entailing " . . . a conclusion concerning a condition not visible but reflected circumstantially by the existence of other visible and known symptoms." *Id.*, 251 Pa.Super at 323, 380 A.2d at 801 *citing Paxos v. Jarka Corp.*, 314 Pa. 148, 153–154, 171 A. 468, 471 (1934). The court also noted that, "[t]he existence of a readily observable physical condition, the evaluation of which does not require a complex application of technical knowledge, can as easily be ascertained by the lay person as by the trained physician." *Id.*

In the instant case, the notation at issue stated, "no hymen". For the following reasons we hold that this was a

factual assertion rather than a diagnosis or opinion. Applying the definitions of diagnosis and opinion set forth in *Green*, to the case *sub judice*, the notation clearly was not a conclusory statement based upon a review of symptoms. It was a physical fact. A gynecological exam was performed on the victim and the doctor found that she did not have a hymen. It was not an opinion based statement, but rather was based on an observation made during the exam.

As this court noted in *Commonwealth v. Seville, supra*, the justification for allowing hospital records to be admitted into evidence under the Business Records as Evidence exception to the hearsay rule is that they are to be considered reliable.

Unusual reliability is regarded as furnished by the fact that in practice regular entries have a comparatively high degree of accuracy (as compared to other memoranda) because such books and records are customarily checked as to correctness by systematic balance striking, because the very regularity and continuity of the records is calculated to train the recordkeeper in habits of precision, and because in actual experience the entire business of the nation and many other activities constantly function in reliance upon entries of this kind.

*Id.* 266 Pa.Super. at 592, 405 A.2d at 1265, *citing* McCormick, Handbook of Law of Evidence, § 306 (2d ed. 1972); *Commonwealth v. DiGiacomo, supra* 463 Pa. 449, 457–8, 345 A.2d 605, 609 (Roberts, J., concurring).

The court also stated that with respect to medical records in particular, "... the manner in which hospital records are maintained carries safeguards 'at least as substantial as the guarantees of reliability of the records of business establishments" and noted that, "... 'these recorded facts are routinely used to make decisions upon which the health and life of the patient depend.'" *Commonwealth v. Seville*, 266 Pa.Super. at 592–93, 405 A.2d at 1265, *citing* McCormick, Handbook of Law of Evidence, § 313 (2d ed. 1972).

In *Commonwealth v. Campbell, supra*, this court held that the detection of spermatozoa in the victim's vagina was fact

and therefore was admissible without the testimony of the individual who conducted the test. The court stated that, "[w]hen a circumstance becomes very routine or basic it is designated as a fact." *Commonwealth v. Campbell*, 244 Pa.Super. at 510, 368 A.2d at 1301 (1976). As further support for this conclusion, the court said that "[t]ests to determine the presence of sperm are basic and routine and leave little room for error. Either there was spermatozoa present in her vagina or there was not." *Id.*

Under the circumstances of the present case, we fail to see how the the absence of hymenal tissue differs from the admissibility of hospital records indicating detection of spermatozoa, such as in *Commonwealth v. Campbell*, *supra*, alcohol in the blood as in *Commonwealth v. Seville*, *supra*, or bruises as in *Commonwealth v. Green*, *supra*. It was a factual statement recounting the physician's discovery.

Appellant alleges that the notation was based on opinion and that it raised many questions e.g., did the victim ever have a hymen and if so, how was it destroyed. It is not reasonable, however, for Appellant to assume that the examining physician would be able to answer these questions.

The medical expert who testified at trial stated that it is highly unusual for a twelve year old girl not to have a hymen, but during the course of his testimony added, that while the absence of a hymen was consistent with the victim's claims, a child could endure the abuse described by the victim and still have an intact hymen.

The plain reading of the physician's notation is simply that the child did not have a hymen. It was not written in a confusing or ambiguous manner and therefore, we are not persuaded by Appellant's argument that it was opinion evidence.

■ We also find no merit in Appellant's claim that by admitting the medical record without affording Appellant the opportunity to cross-examine the physician who prepared the report, his constitutional right to confrontation and cross-examination, as provided for in the United States Constitution,

Amendment VI and the Pennsylvania Constitution, Article I, Section 9, was violated.

By raising this claim, Appellant in essence asserts that in every instance where facts contained in a business record are admitted into evidence, the defendant should have a right to cross-examine the individual responsible for recording the information. What Appellant seems to overlook, however, is the underlying purpose of the Uniform Business Records as Evidence Act. The inherent reliability and trustworthiness of factual entries in a business record negate the need for cross-examination. Requiring cross-examination regarding facts contained in the hospital record involved in the present case would therefore obviate the purpose and need for the exception.

Appellant claims that through cross-examination, counsel would have possibly uncovered errors in the transcription of the information, whether the physician exercised care in making the determination, whether he was thorough and what basis he had for the determination. In essence Appellant urges us that by cross-examining the physician, counsel may have been able to show that the physician was not qualified, that the victim did have a hymen, that the victim never had a hymen or that the hymen was damaged as the result of something other than penile penetration. None of these arguments compel us to hold that Appellant's constitutional rights were violated.

As we stated earlier, the Commonwealth's medical expert, Dr. DeJong testified that it is very unusual for a twelve year old female to not have a hymen and added that the lack of a hymen could be the result of trauma caused by penetration by a penis or by any number of other objects, or even, in very limited circumstances, may be the result of a birth defect. Furthermore, while the notation was used by the Commonwealth to add credence to the victim's testimony it alone would not be sufficient to establish a material element of the crime of rape, i.e., penetration. At best, it was circumstantial evidence. As Dr. DeJong testified, while the condition

of the victim's hymen was consistent with her allegations, penile penetration was not the only possible cause of the trauma. Through Dr. DeJong's testimony, the jury was apprised of the potential causes for the destruction of the hymenal tissue.

■■■■ Accordingly, because we hold that the notation was factual and not opinion evidence, and was therefore admissible under the Uniform Business Records as Evidence exception to the hearsay rule, we also hold that Appellant's trial counsel was not ineffective for stipulating to its admission. Since we have been able to reach this determination based upon the record before us, we find it unnecessary to remand this matter to the trial court for appointment of new counsel. *Commonwealth v. McBee, supra.*

Judgment of sentence affirmed.

WIEAND, J., files a concurring opinion. TAMILIA, J., joins the majority opinion and Judge Wieand's concurring opinion.

Ford Elliott, J., files a concurring and dissenting statement.

WIEAND, Judge, concurring:

I concur in the result.

"The definition of business in the Business Records Act is sufficiently broad to include medical or hospital records.... The courts of Pennsylvania, however, have been reluctant to admit those portions of medical or hospital records which include the opinions of medical personnel." Packel and Poulin, Pennsylvania Evidence, Ch. VIII, § 803.6(h), at p. 587 (1987). Therefore, the rule adopted by the Supreme Court is that "hospital records are admissible to show the fact of hospitalization, treatment prescribed, and symptoms given." *Commonwealth v. DiGiacomo,* 463 Pa. 449, 455, 345 A.2d 605, 608 (1975). See: *Commonwealth v. McCloud,* 457 Pa. 310, 322 A.2d 653 (1974); *Commonwealth v. Mobley,* 450 Pa. 431, 301 A.2d 622 (1973). Under this rule, medical diagnoses contained in hospital records are not admissible unless the doctor mak-

ing the diagnosis is available for cross-examination. *Commonwealth v. DiGiacomo, supra* at 455–456, 345 A.2d at 608; *Commonwealth v. McCloud, supra.* This rule has not been modified by the Supreme Court, and its decisions have created no exceptions.

In my judgment, the realities of modern day life require that the Pennsylvania rule be broadened. The majority has done so in this case by relying on Superior Court decisions which have treated several medical diagnoses as statements of fact. I agree. In so doing, the Superior Court has adopted the reasoning of the late Justice Roberts as expressed in his Concurring Opinion in *Commonwealth v. DiGiacomo, supra* at 457–460, 345 A.2d at 609–610. The business and professional records exception to the hearsay rule, he observed,

> "is justified on grounds analogous to those underlying other exceptions to the hearsay rule. Unusual reliability is regarded as furnished by the fact that in practice regular entries have a comparatively high degree of accuracy (as compared to other memoranda) because such books and records are customarily checked as to correctness by systematic balance-striking, because the very regularity and continuity of the records is calculated to train the record-keeper in habits of precision, and because in actual experience the entire business of the nation and many other activities constantly function in reliance upon entries of this kind."

McCormick's Handbook of the Law of Evidence § 306, at 720 (2d ed. E. Cleary, 1972). Wigmore finds that the fact that hospital records are "made and relied upon in affairs of life and death" renders them especially reliable. VI Wigmore, Evidence § 1707, at 36 (3d ed. 1940).

The physician's diagnosis is probably the most important element in the hospital record in determining what treatment is necessary to preserve the patient's life and health. It would seem, therefore, that the reliability of the diagnosis is sufficiently safeguarded to allow its admission even where there is no opportunity for the non-offering party to cross-

examine the recording physician. Cf. *Commonwealth v. Harris,* 351 Pa. 325, 41 A.2d 688 (1945).

Furthermore, I question the efficacy of cross-examination to uncover discrepancies in the physician's diagnosis. As Professor Wigmore has recognized,

> "[a]midst the day-to-day details of sources of hospital cases, the physicians and nurses can ordinarily recall from actual memory few or none of the specific data entered; they themselves rely upon the record of their own action; hence to call them to the stand would ordinarily add little or nothing to the information furnished by the record alone. The occasional errors and omissions, occurring in the routine work of a large staff, are no more an obstacle to the general trustworthiness of such records than are the errors of witnesses on the stand."

Wigmore, supra. See generally, 4 Weinstein's Evidence, ¶ 803(6)[04] (1975); but see McCormick, supra, § 313.

Finally, although the use of the record deprives the non-offering party of the opportunity to explore the physician's qualifications, the fact that the diagnostician is a physician on the staff of a hospital assures at least minimal qualifications. The fact that no greater competence is indicated by the record can be adequately communicated to the jury.

However, even assuming that there may be some danger in admitting diagnoses without cross-examination of the recording physician, this does not dictate that all records containing diagnoses must be excluded from evidence. Judge Weinstein reports that "most federal courts reached an accommodation between the need for relevant information and the fear of uncross-examined opinion. They drew a distinction between diagnoses involving 'conjecture and opinion' and diagnoses upon which 'competent physicians would not differ.'" 4 Weinstein's Evidence, ¶ 803(b)[04] at 803–158 (1975). Records containing diagnoses tending toward the former were excluded, those tending toward the latter were not. McCormick finds a similar development in several state courts. McCormick, supra, § 313. A sample of cases in which other jurisdictions have held that, at least

in some situations, diagnoses are admissible include *Thomas v. Hogan*, 308 F.2d 355 (4th Cir.1962); *Bailey v. Tennessee Coal, Iron & RR. Co.*, 261 Ala. 526, 75 So.2d 117 (1954); *Tryon v. Casey*, Mo.App., 416 S.W.2d 252 (1967); *Brown v. St. Paul City Ry. Co.*, 241 Minn. 15, 62 N.W.2d 688 (1954) (dictum); *Allen v. St. Louis*, 365 Mo. 677, 285 S.W.2d 663 (1956); *Weis v. Weis*, 147 Ohio St. 416, 72 N.E.2d 245 (1947) (dictum); *McReynolds v. Howland*, 218 Or. 566, 346 P.2d 127 (1969); *Travis Life Insurance Co. v. Rodriguez*, 326 S.W.2d 256 (Tex.Ct.Civ.App.1959); *Joseph v. W.H. Groves Latter Day Saints Hospital*, 7 Utah 2d 39, 318 P.2d 330 (1957); *Noland v. Mutual of Omaha Insurance Co.*, 57 Wis.2d 633, 205 N.W.2d 388 (1963).

*Id.* at 457–460, 345 A.2d at 609–610 (footnotes omitted).

For these reasons, I am of the opinion that the Pennsylvania rule must be expanded to allow a medical record to be received as a business record to show that a patient was found to have "no hymen." Although this is a medical diagnosis, it is not based on conjecture and opinion but represents a finding upon which competent physicians would not differ. Therefore, I concur in the result reached by the majority. Whether or not defense counsel stipulated to the notation, the medical record was admissible as a business record to show that the child was found to have no hymen.

Judge Tamilia joins the majority opinion and joins Judge Wieand's concurring opinion.

FORD ELLIOTT, Judge, concurring and dissenting:

I join in the majority's determination that appellant's trial counsel stipulated to the admission of the medical record notation and therefore this issue is waived. However, I respectfully dissent from the majority's alternate holding on the ineffectiveness issue. Rather, I would hold that the notation "no hymen" was *medical opinion* based upon a physical examination. I would find such a notation is subject to interpretation and explanation and therefore is inadmissible without the testimony of the examining physician. *Commonwealth v. Hemingway*, 369 Pa.Super. 112, 534 A.2d 1104

(1987). Therefore, it is of arguable merit whether counsel may be held ineffective for stipulating to its admission.

In his Concurring Opinion Judge Wieand, citing Justice Robert's Concurring Opinion in *Commonwealth v. DiGiacomo,* 463 Pa. 449, 345 A.2d 605 (1975), has called for an expansion of the Business Records Exception to include medical diagnosis as exemplified herein. While I may well agree with his advocacy for a more common sense approach, I must adhere to the caution of former President Judge Spaeth in his Dissenting Opinion in *Commonwealth v. Campbell,* 244 Pa.Super. 505, 368 A.2d 1299 (1976):

> It is evident that the distinction between an entry of fact and an entry of opinion will not always be easy to draw. Moreover, there are opinions and opinions. Thus, encouraged by the commentators, a number of courts have adopted a middle ground, holding that even though the entry is of opinion, it will be admitted if the opinion is one upon which competent physicians would not be likely to differ. That is what Mr. Justice Roberts and Mr. Justice Pomeroy would hold, as they say in their respective concurring opinions in *Commonwealth v. DiGiacomo, supra;* as the opinion by Mr. Justice Roberts collects the authorities, there is no need to cite them here. The fact remains that the view of Mr. Justice Roberts and Mr. Justice Pomeroy is a minority view.

*Id.* at 513, 368 A.2d at 1303 (footnotes omitted).

To date, the majority opinion in *DiGiacomo* continues to set forth the test we must follow. Therefore, I would find the notation "no hymen" to have been inadmissible instantly.