418 A.2d 693

COMMONWEALTH of Pennsylvania

v.

William BAKER, Appellant.

Superior Court of Pennsylvania.

Submitted Dec. 8, 1978.

Filed Feb. 22, 1980.

Roy Davis, Assistant Public Defender, Media, for appellant.

Frank T. Hazel, District Attorney, Media, for Commonwealth, appellee.

Before PRICE, SPAETH and WATKINS, JJ.

PRICE, Judge:

Pursuant to a jury trial commenced on September 6, 1977, appellant was found guilty of two counts each of involuntary deviate sexual intercourse,[1] simple assault,[2] and terroristic threats.[3] Post-trial motions were denied, and appellant was sentenced to concurrent prison terms of from six to twelve years on each involuntary deviate sexual intercourse count, and a concurrent term of two and one-half to five years on the terroristic threats count. He now contends that several reversible errors were committed during trial. We disagree and for the following reasons affirm the judgment of sentence.

Viewing the testimony in the light most favorable to the Commonwealth as verdict winner, the facts of the incident may be briefly summarized as follows: During September of 1976, both appellant and one Robert Moore were inmates at the Broadmeadows Prison in Delaware County. On the 16th and 21st of that month, appellant called Mr. Moore into his cell for a chat. When Mr. Moore entered the cell, appellant

1. 18 Pa.C.S. § 3123.

2. 18 Pa.C.S. § 2701.

3. 18 Pa.C.S. § 2706. Appellant's first trial on these and other charges occurred on May 23–24, 1977, before the Honorable Joseph de Furia, and ended in a hung jury.

held a razor to his throat and forced him against the wall. Appellant next compelled Mr. Moore to undress and bend over a sink, at which time the two engaged in an act of anal intercourse. Appellant was arrested for this affair some three months later, on February 3, 1977.

Appellant's first contention is that he was fatally prejudiced by the assistant district attorney's use of the word "rape" in his opening address to the jury. Appellant argues that because the information filed against him did not include rape, the gratuitous and erroneous use of such an emotionally charged word rendered a fair jury trial impossible. We need not reach the merits of this issue, however, for we find it has been waived.[4]

It is well settled that to preserve for appellate review an objection relating to the opening or closing address of opposing counsel, that objection must be specific and be brought to the trial judge's attention as soon as is practical. *Commonwealth v. Sanabria*, 478 Pa. 22, 385 A.2d 1292 (1978); *Commonwealth v. Richardson*, 476 Pa. 571, 383 A.2d 510 (1978); *Commonwealth v. Kollock*, 246 Pa.Super. 16, 369 A.2d 787 (1977). In the instant case, the following is the sole reference to the incident during the assistant district attorney's opening:

"MR. STEDJE [Counsel for Appellant]: Your Honor, may we approach the Bench, please?

THE COURT: Yes.

MR. STEDJE: With the Court Reporter.

(Whereupon a sidebar discussion was held, as follows:

MR. STEDJE: I am objecting to the District Attorney's opening. He is permitted to testify as to what the evidence will show, make a statement as to what the evidence will show.

4. Even were we to find the issue properly preserved, we would have serious doubts as to the prejudicial effect of such a statement. First, the words 'prison rape' were used extensively during trial by both the prosecutor and counsel for appellant to describe the crime charged. Second, the practical distinction between proving rape and involuntary deviate sexual intercourse is minimal. Third, it is doubtful that 'rape' evokes a more emotional response in a lay jury than 'involuntary deviate sexual intercourse.'

THE COURT: What he expects to show.

MR. STEDJE: That's correct. He hasn't done that. What he is doing is making a statement without saying that it's subject to proof, cross–examination, anything else.

THE COURT: I expect he's going to come to that.

MR. HARRIS [Assistant District Attorney]: Your Honor, that statement is–statement is well within the bounds of propriety. That's a declarative sentence.

THE COURT: I really don't see anything wrong with what he said so far. The only thing is, that kind of made you wince apparently was the use of the word rape.

MR. STEDJE: I'm not attempting to–

THE COURT: This is a, this is his statement of what he expects to prove. Now, I'm sure that if I know Mr. Harris he's going to tell the jury that presently and I know that you're going to tell the jury that; and if you want I'll tell the jury that when the speech is over. But I won't interrupt it.

MR. STEDJE: Thank you.

THE COURT: Your objection is noted."

(N.T. Excerpts 3–4).[5]

From the face of this exchange, it is impossible to determine precisely either what the prosecutor said concerning rape, or what particular statement appellant's counsel found objectionable. The fact that the court opined that counsel "winced" at the word rape is nothing more than conjecture on the part of the trial judge. If counsel wished to move for a mistrial or request curative instructions if in fact the word "rape" was used, he should have specifically done so. Particularly in cases in which the opening address is not recorded, counsel must state their grounds of objection with specificity, and place the allegedly improper remarks on

5. Instead of transcribing the notes of testimony in a comprehensive format, the testimony of several witnesses was individually transcribed. Consequently, the individual notes are referred to by the first word or name appearing in their respective index, *viz.* 'Excerpts' and 'Harrell'.

the record. As counsel neglected to do so in this case, we deem any objection to have been waived.

Appellant next argues that the trial court improperly limited his cross–examination of the victim, Robert Moore. Specifically, Mr. Moore on direct examination testified that appellant forcibly engaged him in an act of sodomy on two separate occasions as described *supra*. On cross–examination, appellant attempted to explore the possibility that this testimony might have been given in return for a reduction in the sentence that Mr. Moore was serving.[6] The trial judge sustained an immediate objection to this inquiry, ordered the question and answer stricken, and instructed the jury to disregard the exchange.[7]

Appellant contends that this information was particularly relevant because at his first trial, Mr. Moore had initially testified that no sexual abuse occurred on September 16th, and altered his testimony only after an alleged guarantee of protection from the prosecutor. Nevertheless, we agree that the trial court correctly refused to allow inquiry into this area. This court has previously stated that: "It is 'hornbook' law that a witness's motivation or induce-

6. Mr. Moore had just begun serving a six year minimum sentence on a rape conviction.

7. The entire exchange was as follows:
"Q. [Counsel for Appellant]: Did you ever ask the Assistant District Attorney to see Mr., Mr. Coll, to see whether it would be possible for you to get a reduction of sentence in return for your testimony—
MR. HARRIS [Assistant District Attorney]: Objection.
BY MR. STEDJE:
Q. –about William Baker?
MR. HARRIS: Objection.
THE WITNESS [Mr. Moore]: No.
MR. HARRIS: Asked that the question be stricken, Your Honor. It's not relevant to the proceedings, what the gentlemen's sentence is, it's not relevant at all and I would ask that the entire question and answer be stricken from the record.
THE COURT: Sustained.
Members of the Jury, you will disregard that question and the answer. Do not consider it at all in your deliberations. Treat it as if it were never said, all right."
(N.T. Excerpts 63–64).

ment to testify is properly within the scope of cross–examination. *See Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931)." *Commonwealth v. Baston*, 242 Pa.Super. 98, 111, 363 A.2d 1178, 1185 (1976). The inducement here, however, has been removed; the return portion of the *quid pro quo* obviated. Mr. Moore was already sentenced on his rape conviction at the time of the first trial, much less the second. Any testimony as to a possible "deal" was thus irrelevant, for Mr. Moore no longer had anything to gain by falsifying his testimony. Once the sentence was imposed, his perception of what might be done on his behalf was quite immaterial. Consequently, as the limits of cross–examination are within the discretion of the trial court, *Commonwealth v. Young*, 263 Pa.Super. 333, 397 A.2d 1234 (1979); *Commonwealth v. Ransom*, 240 Pa.Super. 92, 360 A.2d 721 (1976), we see no error in the restriction here imposed.

Appellant's next argument relates to the following exchange between the assistant district attorney and one Augustus Juisti, a deputy sheriff assigned to Judge de Furia's courtroom during appellant's first trial:

"Q. What in the world were the sheriffs doing locking the defendant and the victim together?

A. Well, as it was stated by my partner Harrell, at the time that this case came up we didn't know anything or have any idea what kind of case it was.

. . . . . . . .

Q. There's been an opening to the Jury.

A. Yes.

Q. We've been told that it's a rape case essentially?

A. Yes.

Q. You guys still locked them together?

A. Yes.

Q. This twenty–nine year old man raped a seventeen–year old boy, locked him together–"

(N.T. Harrell 25–26).

■ Appellant argues that the characterization of the incident as a rape by the assistant district attorney was inflammatory and prejudiced the jurors against his cause. He neglects to note, however, that a strong curative instruction (N.T. Harrell 29) was immediately given by the trial judge in which he admonished the jury that they, and not the district attorney, were the ultimate arbiters of whether the crimes charged had indeed occurred. This was wholly proper. Although we agree that the prosecutor acted injudiciously in his characterization of the incident, this court has often noted that not every unwise or irrelevant remark made by a counsel compels the grant of a new trial. *Commonwealth v. Johnston*, 258 Pa.Super. 429, 392 A.2d 869 (1978); *Commonwealth v. Green*, 251 Pa.Super. 318, 380 A.2d 798 (1977). Moreover, it is well recognized that cautionary instructions delivered by the trial court may generally cure any intemperate remark. *See Commonwealth v. Hughes*, 477 Pa. 180, 383 A.2d 882 (1978); *Commonwealth v. Green, supra; Commonwealth v. Hodge*, 246 Pa.Super. 71, 369 A.2d 815 (1977); *cf. Commonwealth v. Joyner*, 469 Pa. 333, 365 A.2d 1233 (1976). Presently, the trial court effectively eliminated any possible prejudice through the use of its curative instruction.

■ Finally, appellant alleges that a mistrial should properly have been granted after the prosecutor, in response to an objection by appellant's counsel, commented that "Mr. Stedje [Counsel for Appellant] is objecting because his ox is being gored." (N.T. Harrell 43). We have previously noted that such remarks are not inevitably prejudicial to appellant, particularly when, as in this case, the comment is essentially a personal barb directed against opposing counsel. Keeping in mind that the grant of a mistrial is within the sound discretion of the trial judge, *Commonwealth v. Tribblett*, 242 Pa.Super. 164, 363 A.2d 1212 (1976), we find no abuse of that discretion here.

The judgment of sentence is consequently affirmed.

SPAETH, J., files a dissenting opinion.

SPAETH, Judge, dissenting:

I am unable to agree with the majority that the trial court did not err in restricting appellant's right to cross–examine the prosecuting witness, Robert Moore, on his motive for testifying.

It is of course settled that the scope of cross–examination is largely within the discretion of the trial court, and that its action will not be reversed in the absence of an abuse of discretion or error of law. *Commonwealth v. Cheatham*, 429 Pa. 198, 239 A.2d 293 (1968). However, it is equally settled that the right to cross examination "is encompassed by the accused's right of confrontation in a criminal case, as protected by the Sixth Amendment," *Commonwealth v. Greene*, 469 Pa. 399, 404, 366 A.2d 234, 236 (1976), and that the right of confrontation includes the right to cross examine a witness on his possible motive for testifying, *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Commonwealth v. Dawson*, 486 Pa. 321, 405 A.2d 1230 (1979). In the present case, in my opinion appellant was deprived of this right when the trial court sustained the prosecutor's objection to the following question, asked by defense counsel when cross–examining Robert Moore:

Q: Did you ever ask the Assistant District Attorney to see Mr., Mr. Coll, to see whether it would be possible for you to get a reduction of sentence in return for your testimony–

MR. HARRIS (Assistant District Attorney): Objection.

BY MR. STEDJE (Attorney for Defendant)

Q: "–about William Baker?"

(N.T. 63)

It is evident that defense counsel had a basis in fact for his cross–examination. Appellant had been tried on the same charge on May 23–24, 1977, before the Hon. Joseph W. DE FURIA. The trial had resulted in a "hung jury" and consequently a mistrial. During this first trial, Moore testified that appellant had held a razor to his throat on two occasions, but had not committed any sexual assaults upon

him. (5/23–24/77 N.T. 21–26) On redirect examination by the Assistant District Attorney, Moore testified that he feared retaliation from other inmates or appellant if he testified further about the assaults on him. (5/23–24/77 N.T. 34–35) Moore later testified that during a recess in the trial, he had asked to see the Assistant District Attorney to get protection from threats of retaliation. (5/23–24/77 N.T. 36) He then changed his testimony and stated that in fact appellant had committed sexual assaults on him. (5/23–24/77 N.T. 44–48) This change in testimony lead to the following cross–examination by defense counsel:

Q: Now, Mr. More, *[sic]* why are you changing your testimony today?

A: I was guaranteed protection.

Q: Pardon me?

A: I was guaranteed protection.

Q: By whom?

A: People who work in the District Attorney's office.

Q: What does that mean to you?

A: Oh, I think I can trust them.

Q: Have you asked the District Attorney to be taken out of a specific penal institution located in the State of Pennsylvania?

A: No, I didn't.

Q: Have you had any conversations with any District Attorneys concerning the terms of your present incarceration at Camp Hill?

A: No, I haven't.

Q: Do you remember Mr. Coll asking you when you first testified today that something to the effect are you asking for immunity or a reduction in your current sentence in return for your testimony? Do you remember him asking you that?

A: Yes.

Q: Why would he ask you a question like that, Mr. More, if you hadn't had a conversation with him concerning that subject, do you know?

A: No.

Q: You are testifying under oath today that you never had such a conversation with Mr. Coll; is that correct?

A: Before I came up on the stand I asked him could anything be done? He said he would let me know later. There was no conversation.

Q: When did that question from you occur, Mr. More, do you remember?

A: Yes, before I came up on the stand the first time.

Q: And, what did you say to him specifically?

A: Could anything be done about it.

Q: Were those your words, that is my question, were they your words?

A: Yes.

Q: Mr. Coll's response to you was what?

A: He would let me know later.

Q: Well now what did you mean or what did you understand Mr. Coll's statement to you to mean in response to your question? You said what he told you.

A: When he said he would let me know later, I took for granted he would talk to the Judge and see what the Judge said, and whatever the Judge said would go.

Q: Do you feel that by testifying today in Court against William Baker that you could obtain some kind of adjustment of your sentence as a result of your conversation with Mr. Coll?

Do you still have that hope?

A: Excuse me?

Q: Yes.

In response to your question Mr. Coll told you that he would see what could be done later.

Did you understand that to mean that if you testified today against William Baker you would receive consideration at some future time concerning your present incarceration, favorable consideration?

A: No.

Q: I Ask you again, Mr. More, isn't the reason you brought these charges against Mr. Baker to get consideration?

MR. COLL: I object, your Honor. These are argumentative questions at this point.

THE COURT: It is cross–examination.

Overruled.

THE WITNESS: No, it is not my point.

(5/23–24/77 N.T. 57–60)

In short: At appellant's first trial, the court permitted cross–examination of Moore on his possible motive for testifying against appellant; at appellant's second trial, the court forbid such cross–examination.

The majority states that Moore "no longer had anything to gain by falsifying his testimony. Once the sentence was imposed [*i. e.*, Moore's sentence on his own conviction], his perception of what might be done on his behalf was quite immaterial." At 696. I admit to being unable to understand this statement. Does the majority mean that Moore's "perception of what might be done for him was quite immaterial" because, his sentence having been imposed, in fact the Commonwealth could do nothing to him? If that is what the majority means, it is mistaken in two respects. First, in deciding whether a witness is biased, the issue is not whether the witness's "perception" is *right* or not; the issue is whether the perception *exists*. For example, the witness may be entirely mistaken that the defendant has caused him to be fired, or has stolen his wife's affections; if, however, he nevertheless *thinks* the defendant has done either of these things, he may be biased against the defendant, and defense counsel is entitled to demonstrate that bias on cross–examination. Here, Moore's possible perception that the Commonwealth could help him if he testified against appellant at appellant's second trial may have been entirely mistaken, but that does not mean, as the majority seem to think it does, that he could not be cross–examined regarding his (mistaken) perception. Second, it is by no means evident

that Moore's perception was mistaken. Having sought the Commonwealth's favor once, at appellant's first trial, he may well have believed correctly that if he did not again testify against appellant, the Commonwealth would be able to hurt him, as for example by having him transferred to another prison that he did not want to go to, or by objecting to his parole, or, conversely, that the Commonwealth would be able to help him, as for example by having him transferred to another prison that he did want to go to, or by not objecting to his parole. In either case, the cross–examination should not have been forbidden:

> A more particular attack on the witness' credibility is effected by means of cross–examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974).

The trial court's error in prohibiting cross–examination on Moore's possible motive for testifying was not harmless beyond a reasonable doubt. Error is harmless only when the appellate court can determine that the error could not have contributed to the verdict. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978). Where there is a "reasonable possibility" that an error "might have contributed to the conviction," the error is not harmless. *Commonwealth v. Davis*, 452 Pa. 171, 178, 305 A.2d 715, 719 (1973), *quoting Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Here, it is reasonably possible that the trial court's prohibition of cross examination on Moore's motive for testifying may have contributed to appellant's conviction. Had the jury been allowed to hear defense counsel question Moore about his requests to the Commonwealth for favored treatment, they might have discredited his testimony incriminating appellant. This supposition is corroborated by the fact that at appellant's first trial the jury was unable to agree. As the only witness to testify as

to the two assaults upon him by appellant, Moore's testimony was essential to the Commonwealth's case against appellant.* Without Moore's testimony, it seems likely that there would not have been sufficient evidence to support a verdict against appellant. In these circumstances it cannot be maintained that the trial court's error was harmless beyond a reasonable doubt.

I should reverse and remand for a new trial.

---

* The only other witness to the assault was Nathaniel McNair, a fellow inmate who testified that he saw Moore and appellant in appellant's cell on September 16 and 21 of 1976, and that on the latter date he saw appellant's feet in a position behind Moore so as to lead him to conclude that the two were engaging in a sexual act. (9/6–12/77 N.T. 127) However, McNair testified that he did not want to testify further as to what he saw on either date for fear of physical retaliation by appellant or other prisoners acting on his behalf. (9/6–12/77 N.T. 104–119)